IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 11-cv-00797-PAB

MIKHAIL A. BELOBORODYY,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.
_____

**ORDER**
_____

This matter is before the Court on plaintiff Mikhail A. Beloborodyy's complaint [Docket No. 1], filed on March 29, 2011. Plaintiff seeks review of the final decision of defendant Carolyn W. Colvin (the "Commissioner") denying plaintiff's claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c.[1] The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

**I. BACKGROUND**

On November 2, 2006, plaintiff applied for disability benefits under Title II and Title XVI of the Act. R. at 27. Plaintiff alleged that he had been disabled since October 12, 2006. *Id*. After an initial administrative denial of his claim and a hearing before an Administrative Law Judge ("ALJ"), plaintiff's claim was denied on November 6, 2008. *Id*. Plaintiff appealed this denial and the Appeals Council remanded the case to the

---

[1] The Court has determined that it can resolve the issues presented in this matter without the need for oral argument.

ALJ. *Id*.; R. at 50.  Plaintiff received a second hearing before the ALJ on March 22, 2010.  *Id*. at 27.  On July 13, 2010, the ALJ issued a decision denying plaintiff's claim. *Id*. at 35.

The ALJ found that plaintiff had the severe impairments of "degenerative disk disease, and bursitis of both shoulders."  R. at 29.  The ALJ found that these impairments did not meet one of the regulations' listed impairments, R. at 30, and ruled that plaintiff had the residual functional capacity ("RFC") to "lift and carry 10 pounds, sit for six hours total in an eight-hour work day, stand and walk for two hours total in an eight-hour work day, occasionally reach overhead, and occasionally bend, stoop, and crouch.  The claimant is able to perform all other work activities."  R. at 30.  Based upon this RFC and in reliance on the testimony of a vocational expert ("VE"), the ALJ concluded that plaintiff is not disabled because "the claimant is capable of performing other work that exists in significant numbers in the national economy."  R. at 35.

The Appeals Council denied plaintiff's request for review of this denial.  R. at 6. Consequently, the ALJ's decision is the final decision of the Commissioner.

## II. ANALYSIS

### A.  Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse an ALJ simply because the court may have reached a different result based on the

record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### B. The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(1)-(2). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience."  *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).  While the claimant has the initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts."  *Hill v. Sullivan*, 924 F.2d 972, 974 (10th Cir. 1991).

### C.  Step Five Determination

Plaintiff argues that the ALJ erred at step five of his analysis in finding that plaintiff can perform the jobs of addresser, document preparer, and cutter and paster despite his inability to understand, speak, or read English.  Docket No. 11 at 15-22.  Defendant responds that the ALJ properly relied on the VE's testimony in arriving at his determination.  Docket No. 12 at 20-26.

If an ALJ finds at step four that a claimant is not capable of performing his past relevant work, the ALJ must determine whether the claimant is capable of performing other work that exists "in the national economy."  *See Fischer-Ross*, 431 F.3d at 731.  Work "exists in the national economy when it exists in significant numbers either in the region where [the claimant lives] or in several other regions of the country."  20 C.F.R. § 404.1566(a).  In determining whether work exists in significant numbers, an ALJ will take judicial notice of the information listed in the Dictionary of Occupational Titles ("DOT"), a Department of Labor publication that lists job titles and descriptions, as well as county reports, census reports, and other government publications.  20 C.F.R. § 404.1566(d); *see* http://www.occupationalinfo.org/.

An ALJ "may depart from the DOT guidelines describing [a] job so long as the departure is based on a vocational expert's experience with how a job is performed in the 'real world.'"  *Duran v. Astrue*, 654 F. Supp. 2d 1298, 1303 (D. Colo. 2009).  However, testimony based on "underlying assumptions or definitions that are inconsistent with [the Social Security Administration's] regulatory policies or definitions" does not constitute substantial evidence.  *Id*.  Moreover, before relying on the testimony

of a VE that conflicts with the DOT, an ALJ must elicit a "reasonable explanation" from the VE for the conflict.  *Hackett v. Barnhart*, 395 F.3d 1168, 1174-75 (10th Cir. 2005) (citing *Haddock v. Apfel*, 196 F.3d 1084, 1091-92 (10th Cir. 1999)).  It is the responsibility of the ALJ to resolve the conflict and explain in his decision the basis for its resolution.  SSR 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000).

Illiteracy or the inability to communicate in English does not automatically render a claimant disabled, especially if the claimant is younger than forty-five or capable of performing a significant range of work at a particular exertional level.  *See Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001).

In determining whether there are a "significant number" of jobs available in the regional or national economy, an ALJ must take into account a number of factors: "the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work, and so on."  *Trimiar*, 966 F.2d at 1330 (showing of 650 to 900 available jobs was not sufficient to show a significant number of jobs without evaluating enumerated factors) (citing *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988)).

In his November 6, 2008 decision, the ALJ found that plaintiff was unable to perform his past relevant work and had a limited ability to communicate in English.  R. at 78.  He relied on the VE's testimony in concluding that plaintiff could perform the jobs of addresser (15,000 jobs in the national economy and 300 in Colorado), document preparer (44,000 jobs in the national economy and 800 in Colorado), and cutter and

paster (10,000 jobs in the national economy and 200 in Colorado). R. at 79. According to the DOT, the jobs of addresser and document preparer have a language level of two and the job of cutter and paster has a language level of one.[2] *See* http://www.occupationalinfo.org/dot_search.html. None of the jobs listed in the DOT have a language level lower than one. *See* http://www.occupationalinfo.org/appendxc_1.html. The Appeals Council then remanded the case with instructions for the ALJ to:

> Obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base. The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy. [citation] Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles . . . .

R. at 51-52.

At the hearing on remand, the VE testified that a person who cannot

---

[2]DOT language level of two is defined as follows: "Reading: Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes. Writing: Write compound and complex sentences, using cursive style, proper end punctuation, and employing adjectives and adverbs. Speaking: Speak clearly and distinctly with appropriate pauses and emphasis, correct pronunciation, variations in word order, using present, perfect, and future tenses." Language level of one is defined as follows: "Reading: Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers. Writing: Print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses. Speaking: Speak simple sentences, using normal word order, and present and past tenses." *See* http://www.occupationalinfo.org/appendxc_1.html.

communicate in English can perform the jobs of addresser, document preparer, and cutter/paster.  R. at 359, 363, 366-68.  The VE described the job of addresser as placing address labels on envelopes and packages or, in some instances, handwriting or typewriting addresses on envelopes.[3]  R. at 359.  He testified that, to perform this job, an individual would have to be able to recognize "the physical structure of words" and, in certain instances, copy out addresses written in English by hand.  R. at 359-60.  He further testified that an individual would have to know whether an address label was right-side up or not, but that he considered that to be more a matter of "form perception" than reading language skill.  R. at 369-70.  The VE was uncertain when he had last seen someone perform this job in person and explained that, "after 40 years in the field, I'm not sure my memory's that good."  R. at 361.

The VE described the job of document preparer as "opening up paper files; pulling the files from whatever type of binding they had on them, . . . and setting the paper up, getting it straightened up, so that it could be given to the person who actually was running it through a scanner."[4]  R. at 363.  He opined that the reason the DOT lists the job as requiring a language level of two is that employees "would have to make sure that the page of information they were pulling off of the file matched the person that it was supposed to."  *Id*.  He further stated that, "to be able to do it, and do it well, you

---

[3]This occupation "has not been studied by an analyst since publication of the fourth edition DOT in 1977."  *See* http://www.occupationalinfo.org/20/209587010.html ("DLU: 77"); http://www.occupationalinfo.org/appendxc_1.html ("the Date of Last Update [("DLU")] indicates the last year in which material was gathered for that occupation").

[4]This job has not been studied by an analyst since 1986. http://www.occupationalinfo.org/24/249587018.html ("DLU: 86").

would actually have to be able to read names and numbers fairly efficiently." R. at 363-64; *see id*. at 364-65 ("It would be reading . . . below the third-grade level. But it does require some reading to know the difference between, as I said, James, Jim, Jimmy, Jamie, Smith, Schmidt, those types of things.").

With respect to the job of cutter and paster, the VE testified that

> [T]he only thing they have to be able to recognize is the section of the newspaper they're cutting out. Usually, it's a contract type job where they're sent a load of newspapers, and told [to] cut out all the obituaries. . . . They, they use scissors, and cut out each obituary, or each marriage, or each birth announcement, and cut those, place them back in the envelope in the correct order, and then send them back to the, to the person who uses them for marketing. . . . So, the language development is just basically reading headings of a newspaper.[5]

R. at 366-67. On questioning by the ALJ, the VE indicated that he used the term "reading," to mean "recognizing words as opposed to understanding them." *Id*.

On questioning by plaintiff's attorney, the VE testified that, in his experience, all three jobs required understanding verbal instructions in English, but that "it's possible that, that they are given demonstrations, and the person could learn those jobs through demonstration." R. at 368-69.

In his July 13, 2010, decision, the ALJ found that plaintiff is not capable of performing his past relevant work as a construction worker, hand packager, or element winding machine tender, which are categorized as heavy, medium, and light in terms of exertional requirements. R. at 33. The ALJ found that plaintiff "completed the 8th grade in Ukraine, but he is not able to communicate in English. He is considered to be

---

[5]This job has not been studied by an analyst since 1977. http://www.occupationalinfo.org/24/249587014.html ("DLU: 77").

illiterate in English." *Id*. The ALJ noted the VE's testimony that the job of addresser "does not require the worker to understand the meaning of words, but the worker must recognize the physical structure of words and must recognize numerals." R. at 34. He noted the VE's testimony that a document preparer "would have to be able to read basic names and numbers quickly and efficiently." *Id*. He noted the VE's testimony that a cutter and paster "must read the heading of the newspaper, which involves recognizing words rather than understanding them." *Id*. The ALJ went on to reconcile these apparent contradictions as follows:

> The [ALJ] observes that per the DOT the claimant's past relevant work requires language development level of two or three. [citation] The fact that the claimant was able to perform these jobs, despite his inability to speak or read English, indicates that he would be able to perform other jobs that require language development levels of one or two. Additionally, the claimant testified that he can read some street signs when he drives. The claimant also testified that at some of his prior jobs he had supervisors who spoke Russian, but at some jobs his supervisor did not speak Russian. Finally, during some medical appointments the claimant did not require an interpreter, and there is no notation that his wife was present to translate.

R. at 35.

This paragraph does not disclose a "reasonable explanation" for the discrepancy between the DOT and the VE's conclusion. The VE testified that all of these jobs require recognizing and distinguishing a certain number of English words.[6] R. at 359-68. He explained that he did not consider this activity to be "reading" because these jobs do not necessitate understanding the meaning of the words or being able to

---

[6] Even if the Court were to assume that plaintiff could perform the job of addresser, which appears to require the least proficiency in written English, the ALJ did not conduct the requisite analysis to determine whether the number of these jobs available–15,000 nationally and 300 in Colorado–is "sufficient" within the meaning of the Social Security regulations. *See Trimiar*, 966 F.2d at 1330.

pronounce them. R. at 367. Thus, the VE's testimony appears to be based on the assumption that plaintiff can differentiate between a number of written English words or, in the case of an addresser, possibly be able to accurately copy English words.[7] R. at 359.

Regardless of how one defines the term "reading," however, there is no evidence in the record supporting the ALJ's conclusion. Although plaintiff's previous jobs had language levels of two or three, that does not indicate that plaintiff can perform *all* jobs requiring some proficiency in English. Notably, plaintiff testified that his previous jobs did not require him to read anything. R. at 381. Moreover, although plaintiff did not always have a Russian-speaking supervisor, he testified that, "[a]ll the time, I was working with Russians around" and that "[s]ome places, it was supervisor; some places, it could be like a team member who could communicate, who could speak Russian." R. at 382. There is no evidence that plaintiff was required or able to recognize English words at his medical appointments. The only fact cited by the ALJ of potential relevance is a reference to plaintiff's testimony that, when he drives in his neighborhood, he can read "some" of the street signs, although he "usually" knows where he is going in any case because he never drives very far. R. at 380. This fact constitutes a mere "scintilla" of evidence, insufficient to satisfy the ALJ's burden. *See Fischer-Ross*, 431 F.3d at 731; *Flaherty*, 515 F.3d at 1070.

Moreover, the VE acknowledged that each of the three jobs would require that the employee be able to understand verbal instructions given to him in English. R. at

---

[7]This assumption is particularly curious given that plaintiff's only formal education was conducted in Ukrainian, which uses the Cyrillic alphabet.

368. Although the VE assumed that an employer could demonstrate through gestures the nature of the jobs to a non-English speaker, he admitted that he had no experience to support that assumption. R. at 369. There is no evidence in the record that plaintiff was able to understand verbal directions in English on the job site. The ALJ noted that "during some medical appointments the claimant did not require an interpreter, and there is no notation that his wife was present," R. at 35, but did not list the specific medical records that support this conclusion. The Court's review shows that plaintiff typically had his wife present at medical appointments to act as an interpreter. *See, e.g.*, R. at 215 (November 2006 notes from Dr. Scott Bainbridge), R. at 216 (September 7, 2006 notes from Dr. Bainbridge), R. at 227 (December 4, 2006 notes from Dr. Thomas Merkert), R. at 240 (January 19, 2007 notes from Dr. Richard Carson), R. at 245 (July 15, 2008 notes from Dr. John Hughes), R. at 265 (February 27, 2008 notes from Dr. David Richmond), R. at 287 (October 7, 2009 notes from Dr. James Yeash), R. at 295 (April 7, 2009 notes from Dr. Richmond), and R. at 301 (December 31, 2008 notes from Dr. Ray Howe). The occasions where no mention is made of his wife being present, *see, e.g.*, R. at 269 (February 8, 2008 notes from Dr. Richmond), R. at 271 (September 8, 2008 notes from Dr. Jeffrey Wunder), R. at 306 (November 21, 2008 notes from Dr. Richmond), and R. at 312 (September 11, 2008 notes from Dr. Richmond), are more readily explained as evidencing a failure to note the presence of an interpreter than as plaintiff not needing one, especially given that the ALJ found plaintiff to be illiterate. Thus, the ALJ's conclusion that plaintiff would be able to perform the jobs that the VE identified at language development levels one and two is not supported by substantial evidence.

Defendant argues that a finding in favor of plaintiff would "advance the unfair, and absurd, conclusion that most immigrants are entitled to disability benefits." Docket No. 12 at 23 (citing *Charles v. Astrue*, 291 F. App'x 552, 555 (5th Cir. 2008) ("the argument that illiteracy in English preclude[s] employment, taken to its logical conclusion, would mean that virtually all immigrants would be automatically entitled to disability benefits") (internal citations omitted)). The fact that plaintiff himself worked for twelve years before he was injured undermines defendant's concern. Docket No. 11 at 6. Plaintiff does not argue that he is disabled because he cannot speak English, but rather because of the combined effect of his physical impairments and his limited education, including his language proficiency.[8]

In sum, the Court finds that the ALJ failed to elicit or articulate a "reasonable explanation" for the finding that plaintiff can perform the listed jobs despite his inability to communicate in English.[9] *See Hackett*, 395 F.3d at 1174-75.

A court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.

---

[8]Defendant also cites the Social Security regulations, which provide that the "functional capability for a full range of sedentary work represents sufficient numbers of jobs to indicate substantial vocational scope for those individuals age 18-44 even if they are illiterate or unable to communicate in English." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.00(h)(4)(i). This regulation is inapplicable here as the ALJ did not find that plaintiff had the RFC to perform a full range of sedentary work. *See* R. at 34.

[9]Given the Court's resolution of the first argument that plaintiff raises on appeal, there is no need to address plaintiff's second and third arguments. However, the Court notes that the ALJ's conclusions on these issues are supported by substantial evidence and demonstrate that the ALJ applied the correct legal standard.

§ 405(g). The Tenth Circuit has recognized that the Commissioner "is not entitled to adjudicate a case *ad infinitum* until it correctly applies the proper legal standard and gathers evidence to support its conclusion." *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 746 (10th Cir. 1993) (internal citations omitted). It is appropriate to order an award of benefits where an ALJ erroneously concluded that a claimant is capable of performing sedentary work. *Id*. at 745-46 ("Because sedentary work is the lowest classification under the statute, there is no need for further proceedings in this matter other than a remand for an award of benefits."). The length of time that a claimant has been adjudicating his or her claim for benefits is a factor in determining whether to award benefits without remand, *id*. at 746, as is the potential utility of additional fact-finding. *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006).

Since the ALJ found in favor of plaintiff at step four of his analysis, he had the burden at step five to show the existence of other jobs in the economy that plaintiff can perform. *See Fischer-Ross*, 431 F.3d at 731. As explained above, the ALJ did not carry this burden. Nearly seven years have elapsed since plaintiff first filed his disability claim. *See* R. at 27. He has already been through two hearings before the ALJ. *Id*. At the second hearing, the ALJ specifically addressed, and yet failed to cure, the deficiency noted by the Appeals Council. *See* R. at 50-52. It is unclear on this record what benefit would be gained by additional fact-finding. Furthermore, the ALJ has already found that plaintiff is limited to sedentary work, the "lowest classification" under the Social Security statute. *See Sisco*, 10 F.3d at 745-46. Accordingly, an award of benefits without further adjudication is warranted. *See Salazar*, 468 F.3d at 626.

14

## IV.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the July 13, 2010 decision of the Commissioner that plaintiff was not disabled is REVERSED.  It is further

**ORDERED** that this case is remanded for an award of benefits.

DATED September 25, 2013.

          BY THE COURT:

           s/Philip A. Brimmer
          PHILIP A. BRIMMER
          United States District Judge